DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Jerry Hopkins, appeals the judgment of the Lucas County Court of Common Pleas which sentenced him to four years incarceration upon a conviction for trafficking in crack cocaine, a felony of the first degree, after he entered a plea pursuant to North Carolina v. Alford (1970), 400 U.S. 25. At the state's request, the prosecution entered a nolle prosequi to a second count of trafficking in crack cocaine and major drug offender specifications which were attached to each count.
 {¶ 2} Appellant's appellate counsel has, pursuant to Andersv. California (1967), 386 U.S. 738, requested leave to withdraw as appellate counsel. If appellate counsel, following a conscientious examination of his case, finds the case to be wholly frivolous, he should advise the court of such finding and request permission to withdraw. Id. at 744. See, also, State v.Duncan (1978), 57 Ohio App.2d 93. As required by Anders,
appellant's counsel has submitted a brief indicating potential issues for appeal, has mailed a copy of the brief to appellant, and has notified him of his opportunity to submit an appellate brief. Appellant has not submitted his own brief, and the state has not filed an appellee's brief. For the following reasons, we grant appellant's counsel's motion to withdraw and affirm the judgment of the trial court.
 {¶ 3} Appellant's counsel has proposed two potential assignments of error for review:
 {¶ 4} "The trial court erred by overruling the appellant's motion to suppress all evidence obtained from the appellant's arrest.
 {¶ 5} "The appellant's plea should be set aside because it was not made knowingly, voluntarily or intelligently."
 {¶ 6} The suppression hearing yielded the following facts relevant to appellant's arrest and the subsequent search. Detective Nora Mugler of the Toledo Police Department received a tip from a confidential informant ("CI") that Jerry Hopkins, appellant, would be delivering a quantity of crack cocaine on a specific day and time at a specific location, that of a known drug house. The tip was received at 2:30 in the afternoon, and appellant was to deliver the drugs at 4:30 that same afternoon. Detective Mugler had prior occasion to search the specific house and drugs had been recovered there. The CI gave a physical description of Hopkins and said that Hopkins would be driving either a gray van or a black Cadillac with "fancy rims" on the wheels.
 {¶ 7} Mugler testified that two hours was not enough time to obtain a warrant. Instead, Mugler independently corroborated the CI's information by obtaining a photo of Hopkins from the Ohio Department of Motor Vehicles and ascertaining that Hopkins did have vehicles of both descriptions registered in his name. She compiled the information in a "packet," and assembled a team of officers to be at the house in question at 4:30 p.m.
 {¶ 8} Mugler sat in her vehicle approximately eight houses away from the target location, with a full view of the house. Two uniformed officers sat waiting in another vehicle out of sight of the house and in radio contact with Mugler. At approximately 4:35 p.m., a Cadillac matching the CI's description pulled up to the curb in front of the house, driven by a man matching both the CI's description and the photo obtained through the DMV. He walked up to the home, knocked on the front door and then left after no one answered. The CI was inside the house speaking to Mugler on a cell phone; when the man arrived, the CI verified that the man was Hopkins, and that he was there to sell crack cocaine.
 {¶ 9} After Hopkins got into his Cadillac and drove away from the house, Mugler directed the uniformed police officers to stop him. Mugler stated she arrived at Hopkins' car shortly afterwards, and saw Hopkins standing behind his vehicle being patted down. A bag containing what was later identified as crack cocaine was taken from Hopkins' front pocket, along with $4,299 in cash from a wallet in his rear pocket. Mugler read Hopkins his Miranda rights from a standard issue card.
 {¶ 10} The uniformed officer driving the car also testified at the suppression hearing. He stated that upon receiving Mugler's communication, he activated his vehicle's lights and sirens, pulled Hopkins over, and immediately placed him under arrest for "conveyance of drugs."
 {¶ 11} Appellant's first proposed assignment of error challenges the trial court's decision to admit evidence obtained from the stop and search. In its review of a ruling on a motion to suppress "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. Accepting the facts as found by the trial court as true, the appellate court must then independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. State v. Klein
(1991), 73 Ohio App.3d 486, 488." State v. Kobi (1997),122 Ohio App.3d 160, 168.
 {¶ 12} The Fourth Amendment protects individuals against unreasonable searches and seizures. Katz v. United States
(1967), 389 U.S. 347. Here, appellant was arrested without a warrant. "An arrest without a warrant is constitutionally invalid unless the arresting officer had probable cause to make it at that time. To have probable cause, the arresting officer must have sufficient information derived from a reasonably trustworthy source to warrant a prudent man in believing that a felony has been committed and that it has been committed by the accused."State v. Timson (1974), 38 Ohio St.2d 122, paragraph one of the syllabus. Mugler testified that probable cause to arrest appellant existed through the information obtained through the CI and independently corroborated by her. "Probable cause for a warrantless arrest exists when the arresting officer has within his knowledge facts and circumstances that amount to reasonable and trustworthy information sufficient to warrant a prudent man in believing that a crime or offense had been or is being committed and that the person to be arrested is the probable offender." State v. Kobi (1997), 122 Ohio App.3d at 169, citingBeck v. Ohio (1964), 379 U.S. 89. A search incident to a lawful arrest is one of the valid exceptions to the warrant requirement for searches. State v. Akron Airport Post No. 8975, Veterans ofForeign Wars of U.S. (1985), 19 Ohio St.3d 49, 51. "`Pursuant to a search incident to arrest, the police may conduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well.' State v. Jones (1996), 112 Ohio App.3d 206, 215, citingUnited States v. Robinson (1973), 414 U.S. 218, and Gustafsonv. Florida (1973), 414 U.S. 260." State v. Streeter (2005),162 Ohio App.3d 748, 757.
 {¶ 13} The independent corroboration of the CI's information and the totality of the circumstances would lead a reasonably prudent person to conclude that appellant was in the process of committing a crime. See, also, State v. Pigot, 2d Dist. No. 18962, 2002-Ohio-3810, ¶ 26, finding information from a reliable source that a person would be in possession of a controlled substance intending to distribute it, when independently corroborated, constituting probable cause for a warrantless felony arrest. The trial court did not err in concluding that the state carried its burden of proof demonstrating that the warrantless arrest was made with valid probable cause and that the search incident to that arrest was proper. Therefore, appellant's first proposed assignment of error has no merit.
 {¶ 14} Appellant's second proposed assignment of error concerns his plea. A defendant may plea pursuant to NorthCarolina v. Alford when he wishes to enter a plea of guilty while professing his innocence. Since the effect of such a plea is the same as a guilty plea, it must be made voluntarily, knowingly and intelligently. Alford, 400 U.S. at 36-37. The trial court must personally advise a criminal defendant of his Constitutional rights, and the defendant must waive these rights voluntarily and intelligently prior to the court's acceptance of a plea. State v. Holder (1994), 97 Ohio App.3d 486, 489, citingBoykin v. Alabama (1969), 395 U.S. 238; McCarthy v. UnitedStates (1969), 394 U.S. 459. A trial court must also comply with Crim.R. 11, which ensures adequate appellate review for compliance with due process demands. Holder,97 Ohio App.3d at 489. A reviewing court examines the totality of the circumstances surrounding a defendant's plea when determining compliance with due process. State v. Nero (1990), 56 Ohio St.3d 106, 108.
 {¶ 15} After reviewing appellant's plea hearing, we find that appellant did make a voluntary, intelligent, and knowing waiver of his Constitutional rights. The trial court thoroughly reviewed appellant's rights, ascertained that appellant comprehended the nature of the proceedings and the consequences of his plea, and appellant signed a written plea of no contest in the court's presence at the plea hearing. The transcript of the plea hearing demonstrates that appellant's plea was voluntary, that he understood the effects of his plea, and that he understood the rights waived. Thus, appellant's second proposed assignment of error is meritless.
 {¶ 16} Upon our own independent review of the record, we find no other grounds for a meritorious appeal. Accordingly, this appeal is found to be without merit and is wholly frivolous. Appellant's counsel's motion to withdraw is found well-taken and is hereby granted. The decision of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Skow, J., Parish, J., concur.